Filed 10/29/15  P. v. Razo CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ALEJANDRO RAZO,<br><br>    Defendant and Appellant. | B257727<br><br>(Los Angeles County<br>Super. Ct. No. LA073386) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Thomas Rubinson, Judge.  Affirmed.

        Murray A. Rosenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

        Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Yun K. Lee and William H. Shin, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Alejandro Razo appeals from a judgment following his conviction of sexual contact with human remains. (Health & Saf. Code, § 7052, subd. (a).) Appellant argues the trial court committed reversible error in failing to instruct the jury to consider whether the main witness against him, Pamela Pearl, had admitted being untruthful. We disagree and affirm.

## FACTUAL AND PROCEDURAL SUMMARY

An 82-year-old patient died at the Sherman Oaks Hospital on January 20, 2013, after suffering septic shock. Appellant was the patient's primary nurse, and after her family and hospital staff left, he remained in her room to remove tubes and bag the body. When Pearl, the nurse in charge, went in to help appellant, she saw him making a thrusting motion between the patient's legs. One of the legs was over appellant's shoulder. Pearl initially thought appellant either had dropped the body or was trying to lay it on the ground, but then she noticed that appellant's scrub pants were down to his mid-thigh, and she could see the head of his penis and his scrotum. When Pearl asked appellant what he was doing, he pushed the body to the middle of the bed and pulled his pants up. Pearl commented that was "mentally ill behavior" and asked appellant if he had done something like that before; he said he had not.

Pearl was visibly upset when she approached the nurse's station after the incident and when she related what she had seen to a respiratory therapist who happened to be at the station. She kept asking herself out loud what she should do. When appellant came out of the patient's room, Pearl told him he would lose his job, and he replied that his life was in her hands. At Pearl's direction, the nursing staff called the police.

During the autopsy, the pathologist observed injuries to the corpse's vaginal area, and consulted Astrid Heger, an expert on sexual assault and elder abuse. Dr. Heger's examination revealed massive hemorrhages beneath the skin surrounding the vaginal opening, and she opined that the injuries were consistent with blunt trauma rather than the insertion of a catheter. According to Dr. Heger, the injuries were inflicted before death. DNA consistent with that of the deceased patient was present in samples collected

2

from appellant's penis, scrotum, and left hand; one of several samples collected from the patient's vaginal area was inconclusive for male DNA, while the rest of the samples were negative.

Appellant was charged with sexual penetration by an unknown object (Pen. Code, § 289, subd. (a)(1)(A), count 1), with great bodily injury enhancement allegations (§§ 12022.7, subd. (c), 12022.8), and sexual contact with human remains (Health & Saf. Code, § 7052, subd. (a), count 2).

At the jury trial, the defense experts attributed the injuries in the patient's vaginal area to her septic state, and suggested alternative explanations for the presence of the patient's DNA on appellant's penis. The defense challenged Pearl's reputation for honesty through a character witness. It also impeached Pearl with her prior inconsistent statements—that she saw appellant enter the patient's room and followed him two minutes later, that the patient's body was on its side and both legs were on appellant's shoulder, that appellant's scrubs were pulled down to his knees or ankles, and that Pearl was unsure whether appellant's penis was circumcised. When confronted with her prior inconsistent statements, Pearl explained that her time estimate may have been off; that she did not know whether appellant was circumcised, but she did not see any foreskin; and that she had initially said appellant's pants were down to his ankles as a "euphemism" because "it's sort of an expression, if you will."

The jury acquitted appellant on count 1 and convicted him on count 2. He was sentenced to two years in county jail, received 16 days of credits, and was ordered to pay various fines and fees.

This appeal followed.[1]

---

[1] The notice of appeal raises three issues: the dismissal of a peremptory challenge without a hearing, the introduction of testimony about appellant's prior sexual misconduct at work, and judicial misconduct. None of these issues has been briefed on appeal, and they are deemed abandoned.

**DISCUSSION**

We review claims of instructional error de novo. (*People v. Cole* (2004) 33 Cal.4th 1158, 1217.) The jury was instructed with a version of CALCRIM No. 226, which included a list of factors that may be used to evaluate the credibility of witnesses. Appellant argues that the court committed reversible error in denying the defense request that the instruction include the factor "Did the witness admit to being untruthful?"

CALCRIM No. 226 tracks the language of CALJIC Nos. 2.20 (listing credibility factors the jury may consider), 2.21.1 (warning the jury against rejecting witness testimony merely because of inconsistencies); and 2.21.2 (allowing the jury to disbelieve the testimony of a willfully false witness). (*People v. Vang* (2009) 171 Cal.App.4th 1120, 1129–1131.) As to the factors included in CALJIC No. 2.20, the "substance" of that instruction should be given in every criminal case, although the court "may omit factors that are inapplicable under the evidence." (*People v. Horning* (2004) 34 Cal.4th 871, 910, citing *People v. Rincon–Pineda* (1975) 14 Cal.3d 864, 883–884; see also Evid.Code, § 780 [nonexclusive list of credibility factors trier of fact may consider].)

The parties disagree whether the admission of untruthfulness factor is applicable under the evidence in this case. Pearl testified at trial that appellant's pants were either at mid-thigh or further down "where he could reach [them]" while looking at her as he pulled them up. During cross-examination, Pearl was questioned about her prior statement to police that appellant's pants were pulled down to his ankles. Pearl testified that when police arrived, she was "in great distress . . . hyperventilating . . . really nervous. I said his pants are down at his ankles. I could have said such a thing as a euphemism, but I can guarantee that. You know, it's haunted me for a year and a half, the way he looked in my eyes and pulled up his pants." Defense counsel's motion to strike her answer as nonresponsive was overruled, and the court sustained the prosecutor's objections to defense counsel's attempts to characterize Pearl's statement to police as "a lie" or as "untrue." Pearl testified further, "I was very clear on where his pants were, and what his actions were. Could I have said in a euphemism, 'His pants are down to his ankles'? It's possible I said such a thing." Defense counsel asked, "So it's

4

possible you said it, but it wasn't true? It was a euphemism? Is that true or not?" Pearl responded, "It was an—I have to look up the definition of the word 'euphemism,' but I think it's sort of an expression, if you will." The prosecutor objected to defense counsel's argumentative comment "How about the word[] 'truth'?," and the court urged counsel to move on because the defense had made its point.

When defense counsel later requested that the jury be instructed to consider whether Pearl had admitted being untruthful based on her testimony on cross-examination, the court declined to include the admission of untruthfulness factor in CALCRIM No. 226 because it did not consider Pearl's testimony to be an admission of untruthfulness "in the way that instruction contemplates."

It is clear from the record that Pearl did not accept defense counsel's characterization of her prior inconsistent statement as a lie, and that the court sustained the objections to defense counsel's characterization of Pearl's testimony as a lie. To the extent Pearl told police appellant's pants had been pulled down, her testimony at trial was not inconsistent, and she did not admit her prior statement was untruthful. Thus, the record does not demonstrate an unequivocal admission of untruthfulness, particularly with regard to the material portion of Pearl's testimony regarding whether the pants had been pulled down at all. Nevertheless, Pearl's characterization of her statement to police regarding how far down the pants had been pulled as a "euphemism" was inaccurate because a euphemism is the use of a more agreeable expression for something unpleasant. (See Webster's 10th Collegiate Dict. (1995) p. 400.) Pearl did not employ that rhetorical device, but a trier of fact could interpret her testimony at trial as an admission that she exaggerated, or overstated how far down appellant's pants had been pulled. (See *ibid*., p. 403 [defining "exaggerate" as "to enlarge beyond . . . the truth"].)

Assuming that Pearl admitted her prior statement was at least partially untrue and that this admission was sufficient to support giving the jury the admission of untruthfulness factor (see *People v. Martinez* (1978) 82 Cal.App.3d 1, 19–20 [error not to instruct jury with admission of untruthfulness factor where witness admitted his

5

testimony at trial differed from his testimony at preliminary examination]), we disagree that the failure to do so was prejudicial error.

The omission of an instruction relevant to the evaluation of witness credibility is reviewed under *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. Murillo* (1996) 47 Cal.App.4th 1104, 1108.) We determine whether the defendant has shown a better result would have been reasonably probable had the omitted instruction been given to the jury. (*Ibid*.) In doing so, we consider whether the instructions as a whole properly guided the jury's evaluation of the witness's credibility. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1144.)

Here, the jury was instructed that in evaluating witness credibility, it could consider anything that tends to prove or disprove the truth or accuracy of the testimony. The jury also was instructed that if it decided a witness deliberately lied about something significant, it should consider not believing the witness; if it decided that the witness lied about some things, but told the truth about others, the jury was allowed to partially credit the witness's testimony. As given, CALCRIM No. 226 did not prevent the jury from considering whether Pearl's exaggeration was materially false.

Appellant complains the court sustained the prosecutor's objection to defense counsel's statement in closing argument that Pearl admitted "in court that she doesn't always tell the truth, that she creates drama." However, in other portions of the closing argument, defense counsel was allowed to argue to the jury that Pearl admitted "she didn't tell police the truth" as to how far down appellant's pants had been pulled. Counsel argued that Pearl had said appellant's pants were "on the floor" for "dramatic effect," adding: "You don't talk for dramatic effect when you're accusing somebody of a crime like that . . . And if she's being dramatic about the pants on the floor, is she being dramatic about seeing his penis at all? That's what dramatic effect is."

As the court explained in *People v. Murillo*, *supra*, 47 Cal.App.4th 1104, on which appellant relies, the omission of a particular credibility instruction did not preclude the defense "'from asking the jury to draw the common-sense inference mentioned in the instruction.'" (*Id*. at p. 1108, quoting *Walbrook Ins. Co. v. Liberty Mutual Ins. Co.*

6

(1992) 5 Cal.App.4th 1445, 1462.)  Here, the gist of defense counsel's argument was that because one portion of Pearl's testimony was exaggerated for dramatic effect, the jury should disbelieve other portions of her testimony as well.  Not only was the defense allowed to present that argument to the jury, but the argument tracked the language about deliberately false witness testimony that was included in the version of CALCRIM No. 226 given to the jury.  No prejudicial error occurred.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EPSTEIN, P. J.

We concur:


WILLHITE, J.


MANELLA, J.